IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| VOLTAGE HOLDINGS, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-741 (AJT/WEF) |
| | ) | |
| DOES 1-100, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## TEMPORARY RESTRAINING ORDER

Pending before the Court is an *ex parte* motion for a Temporary Restraining Order brought by Plaintiffs Voltage Holdings, LLC; Voltage Pictures, LLC; After II Movie, LLC; Venice PI, LLC; Wonder One, LLC; Screen Media Ventures, LLC; American Cinema International, Inc.; and American Cinema Inspires, Inc. ("Copyright Plaintiffs"); and 42 Ventures, LLC ("Plaintiff 42," together the "Plaintiffs"). [Doc. No. 8.] Upon consideration of the Motion and supporting papers, and for the foregoing reasons, the Court GRANTS Plaintiffs' Motion.

## I.    BACKGROUND

Plaintiffs bring this action to "stop massive piracy of their copyright protected motion pictures and registered trademarks" brought on by "subscribers of the data center DATACAMP LIMITED" ("DataCamp") [Compl. ¶ 1.][1] Plaintiffs seek a TRO granting temporary asset restraint and expedited discovery pursuant to 17 U.S.C. § 502(a) and Federal Rule of Civil Procedure 65.[2]

---

[1] The Copyright Plaintiffs bring claims under the Copyright Act (17 U.S.C. § 101, *et seq.*) and the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. § 1202). [Compl. ¶ 8.] Plaintiff 42 brings infringement, contributory infringement, and unfair competition claims under Sections 32(l) and 43(a) of the Lanham Act (15 U.S.C. §§ 1114(1), 1125(a)). [*Id.*]

[2] Although Plaintiffs appear to request a TRO against all Defendants, the primary relief they seek is against Defendant VeePN. As acknowledged by Plaintiffs, they do not yet know the identity of Defendants DOES 1-100 nor do they appear to seek any direct relief against the DOE defendants. The only relief sought is expedited third-party discovery to learn their identities. Because the Plaintiffs lack contact information for Defendants DOES 1-100, it is not clear

In 2021, some of the plaintiffs in this matter brought an action in this Court against a VPN service provider, known as Wicked Technology Limited d/b/a VPN.HT ("Wicked"), for distributing the piracy app "Popcorn Time" and for promoting its VPN service, Popcorn Time VPN. *See Millennium Funding, Inc., et al. v. John Doe, d/b/a Popcorntime.app, et al.*, Case No. 121-cv-282-RDA-TCB. Popcorn Time is a notorious source of pirated media, having previously been referenced in the "in the news media as 'Netflix for Pirates.'" [Doc. No. 9 ¶¶ 19-20; Doc. No. 1-5 ¶ 43; Doc. No. 9-1 ¶ 13.] Popcorn Time "offers its users nearly instantaneous access to huge quantities of infringing content." [Doc. No. 9 ¶ 21.] Wicked ended its partnership with the Popcorn Time operators and later agreed to a stipulated judgment. [Doc. No. 9 ¶ 23; Doc. 1-7 ¶ 17.] A default judgment was later entered against the operators of Popcorn Time, requiring the transfer of their domain (popcorn time.app) to be transferred to one of the plaintiffs in that action. [Doc. No. 1-7 ¶ 17.] Following the grant of the TRO in the *Millennium* action, which ordered Google to lock the Popcorn Time domain, the operators of Popcorn Time announced in a message board that the app would be distributed from a new website. [*Id.* ¶ 18.] The PopCorn time operators later announced it had a new "VPN partner," the Defendant VeePN. [*Id.*][3]

Plaintiffs allege that Defendant VeePN,[4] a subscriber of DataCamp, provides a Virtual Private Network ("VPN") service to assist end users in "committing and concealing movie piracy." [Compl. ¶ 1.] Specifically, Defendant VeePN distributes and reproduces Plaintiffs' works in

---

how Plaintiffs could effectuate sufficient service in time for the preliminary injunction hearing. Accordingly, the Court will not grant any other specific relief as to the DOE Defendants. Plaintiffs are free to specify what relief, if any, should be presently granted as to the DOE Defendants in further motions.

[3] In one of Plaintiffs' supporting declarations, they note that VeePN began "promoting itself as 'Popcorn Time VPN' barely 3 months after" the widely-reported injunction against Wicked thereby leading the Plaintiffs' declarant to believe that VeePN "willingly" tried to "capture some of the piracy market share." [Doc. No. 1-7 ¶ 22.]

[4] Defendant VeePN is a corporation organized under the laws of Panama with its principal place of business also in Panama. [*Id.* ¶ 51.] Plaintiffs allege, upon information and belief, that VeePN is controlled by one or more individuals in Russia and/or Ukraine, including an individual named Tetiana Horkusha. [*Id.* ¶ 56.]

violation of Plaintiffs' exclusive rights and "advertises its VPN service" to allow end users to bypass various legal restrictions to stream or download Plaintiffs' protected works in violation of Plaintiffs' rights. [Compl. ¶¶ 87-93.] Defendant VeePN "blatantly promotes" this service, without authorization, under Plaintiff 42 Ventures, LLC's registered trademarks. [*Id.*] VeePN's customers ("end users") use VPN's services "exactly as encouraged – to pirate copyright protected content including Plaintiffs' [copyrighted content]." [*Id.* ¶ 1.] Datacamp's other subscribers also "stream, distribute and reproduce unlicensed copies of Copyright Plaintiffs' motion pictures." [*Id.*]

The Motion asserts that VeePN promotes its service as "Popcorn Time VPN," a resource to allow end users to use the piracy application of Popcorn Time without fear of legal consequences. [Doc. No. 9 ¶¶ 19-20.] VeePN promotes its services on the piracy website YTS.MX, including advertising language that states "If you torrent without a VPN, your ISP can see that you're torrententing and may throttle your connection and get fined by legal action!," and then directs the user to click on a link for a "Secure VPN." [*Id.* ¶ 22; Doc. No. 1-5 ¶¶ 19-22.] The link redirects to a VEEPN.COM website. [*Id.*] VeePN also promotes its services for use of other notorious piracy websites such as The Pirate Bay and RARBG. [Doc. No. 1 ¶¶ 109, 158, 169; Doc. No. 1-5 ¶¶ 36-39; Doc. No. 9 ¶ 2.] Additionally, at the website "https://veepn.com/blog/popcorn-time-vpn," Defendant VeePN promotes itself as "Popcorn Time VPN," explicitly stating that: "Downloading and sharing files via torrent is a violation of copyright law. It means that you may be punished by law. That's why you need a Popcorn Time VPN." [Doc. No. 1-5 ¶ 43.]

Defendant VeePN accepts payment for its services via PayPal and AliPay, among other methods. [Doc. No. 9 ¶ 25.] When a user chooses AliPay, the payments goes to DDW Corp. Limited—a private limited company registered in Cyprus and engaged in the business of helping students cheat on homework. [*Id.* ¶¶ 2, 25-26.] When a user chooses PayPal, the payment goes to

IT Research LLC—a Florida LLC whose sole member is a Ukrainian national, Tetiana Horkusha. [*Id.* ¶¶ 25, 27.]

Defendants DOES 1-100 are also subscribers of DataCamp, who use "IP addresses and servers they lease from DataCamp to publicly perform, download and reproduce Plaintiffs' Works without a license and further share (distribute) copies of Plaintiffs' Works to individuals across the world and/or stream (publicly perform) from said IP addresses." [Compl. ¶ 57.] Plaintiff alleges DataCamp is in possession of identification information or information that will lead to the identities of Defendant DOES 1-100. [*Id.* ¶ 58.]

Defendants VeePN and DOES 1-100 contracted with DataCamp for hosting and network services, including IP addresses from servers in Ashburn, Virginia. [*Id.* ¶ 13]. Defendants distributed illicit copies of Plaintiffs' works from these servers. [*Id.* ¶¶ 14-15.] Additionally, Defendant VeePN operates the website VEEPN.COM, which is registered through a registrar with the .com top level domain register VeriSign, Inc.—an entity located in Reston, Virginia. [*Id.* ¶ 17.] VeePN also operates the website VEEPN.Co, which is registered through a registrar with the .co top level domain register CO Internet S.A.S, located in Bogota, Columbia, a subsidiary of Neustar, Inc.—an entity located in Sterling, Virginia. [*Id.* ¶ 18.]

## II.   LEGAL PRINCIPLES

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions. "The standard for granting either a TRO or a preliminary injunction is the same." *Sarsour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017) (quoting *Moore v. Kempthorne*, 464 F.Supp.2d 519, 525 (E.D. Va. 2006)). Both are "extraordinary remedies involving the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." *Id.* (quoting *MicroStrategy Inc. v. Motorola*, 245 F.3d 335, 339 (4th Cir.

2001)). To obtain this relief without first providing notice to the adverse party, a movant must show specific facts that clearly demonstrate the risk of immediate and irreparable injury if the order does not issue. *See Active Creations LLC v. Beijing Jinwei Kangda Medical Instrument Ltd.*, 2021 WL 5190857, at *3 (E.D. Va. July 27, 2021) (Rule 65(b) also provides for "the issuance of a temporary restraining order without notice to the adverse party only in limited circumstances"); *JTH Tax, LLC v. Williams-Eton*, 2020 WL 4708701, at *1 (E.D. Va. Apr. 27, 2020) ("Temporary restraining orders are 'granted only in rare circumstances, such as when notice is impossible because the adverse party's identity is unknown or where notice would cause additional harm like destruction of evidence.'" (citation omitted)); *see also* Fed. R. Civ. P. 65(b).

"While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 422 (4th Cir. 1999). A grant of temporary injunctive relief requires the movant to establish the same four factors that govern preliminary injunctions. *Tau v. Commonwealth One Fed. Credit Union*, 2022 WL 1271125, at *2 (E.D. Va. Apr. 28, 2022). Therefore, the movant must establish: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The failure to show any one of the relevant factors mandates denial of the preliminary injunction [or TRO]." *Parson v. Alcorn*, 157 F. Supp. 3d 479, 491 (E.D. Va. 2016) (citation omitted).

### III.    ANALYSIS

The Court finds that personal jurisdiction is appropriate over Defendant VeePN because they purposefully availed themselves of the privileges of conducting business in Virginia, including the registration of two websites on domains located in this district, directly advertising the use of Virginia-based servers, and the location of at least one employee in this district. [Doc. No. 9 ¶¶ 32-33.] At least one of Defendant VeePN's end users used an IP address in Virginia to engage in piracy of Plaintiffs' protected works.[5] [*Id.* ¶ 32.]

a.   Temporary Restraining Order

Having reviewed the papers, declarations, and memorandum filed in support of Plaintiffs' *ex parte* Motion for a Temporary Restraining Order, the Court finds that the Plaintiffs have satisfied all four factors necessary for the issuance of a TRO.

i.  *Likelihood of Success on the Merits*

"Under the standard analysis, a plaintiff must make a clear showing that it is likely to succeed on the merits of at least one of its claims at trial." *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 193 F. Supp. 3d 556, 566 (E.D. Va. 2016) (citation omitted).[6] As described below, the Court concludes that the Copyright Plaintiffs satisfy their burden as to their contributory infringement claim; and that Plaintiff 42 has satisfied their burden as to the trademark counterfeiting claim. Accordingly, the Court will not analyze the likelihood of success for

---

[5] "[A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002).

[6] "[A] finding of a likelihood of success on the merits is not tantamount to a decision on the underlying merits, and courts should not improperly equate likelihood of success' with success." *Prysmian Cables & Sys. USA, LLC v. Szymanski*, __ F. Supp. 3d __, 2021 WL 5578145, at *8 (D.S.C. Nov. 29, 2021) (internal quotations and alterations omitted) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981)).

Plaintiffs' other claims. *Id.* ("Where multiple causes of action are alleged, a plaintiff need only show likelihood of success on one claim to justify injunctive relief." (citation omitted)).

The Copyright Plaintiffs are likely to succeed on their contributory infringement claim because they have shown that VeePN promotes and distributes Popcorn Time VPN, which suggests that it is "infring[ing] contributorily by intentionally inducing or encouraging direct infringement." *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.,* 881 F.3d 293, 307 (4th Cir. 2018) (quoting *Metro- Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). Defendant VeePN includes links and/or directly advertises on numerous movie piracy websites. [Doc. No. 1-5 ¶¶ 15-41.] Additionally, at the website "https://veepn.com/blog/popcorn-time-vpn," Defendant VeePN promotes itself as "Popcorn Time VPN," explicitly stating that: "Downloading and sharing files via torrent is a violation of copyright law. It means that you may be punished by law. That's why you need a Popcorn Time VPN." [*Id.* ¶ 43.] Relatedly, the Copyright Plaintiffs are likely to succeed on the merits of their claim for direct copyright infringement because they can show "ownership of a valid copyright" and Defendants' "copying of constituent elements of the work that are original" as required by 17 U.S.C. § 106. *CoStar Grp., Inc. v. LoopNet, Inc.,* 373 F.3d 544, 549 (4th Cir. 2004). The Copyright Office has issued certificates of registration of the Copyright Works listed in Exhibit 1 to the Complaint, [Doc. No. 1-1], which create a presumption of validity and ownership, 17 U.S.C. § 410(c). The Copyright Plaintiffs have put forward affidavits from their investigators that indicate that IP addresses associated with Defendant VeePN and/or its end users have copied, streamed, and/or otherwise distributed pirated versions of Plaintiffs' works through peer-to-peer/BitTorrent networks and/or protocols. [Compl. ¶¶ 85-117; Doc. No. 1-5 ¶¶ 9-12; Doc. No. 1-6 ¶¶ 3-5, 8-11]; *see also ME2 Prods., v. Ahmed*, 289 F. Supp. 3d 760, 763 (W.D. Va. 2018) (finding plaintiff established second element where they alleged that the

"copyrighted material was copied and distributed from the defendants' IP addresses using BitTorrent"); *Millennium Funding, Inc. v. Doe*, 2021 WL 5217018, at *6 (E.D. Va. Oct. 15, 2021) ("[The] BitTorrent protocol used by Popcorn Time involves the peer-to-peer sharing of file 'pieces' to recreate and distribute Copyright Plaintiffs' Works. This replication violates Copyright Plaintiffs' exclusive rights to reproduce their Works."), *report and recommendation adopted as amended*, 2022 WL 1156579 (E.D. Va. Jan. 20, 2022).

To prevail on a claim for trademark counterfeiting, Plaintiff 42 must prove that Defendant VeePN (1) intentionally used a counterfeit mark in commerce; (2) knowing that the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse or deceive. 15 U.S.C. § 1114(1); *Match.Com, L.L.C. v. Fiesta Catering Int'l, Inc.*, 2013 WL 428056, at *6 (E.D. Va. Jan. 31, 2013). The Lanham Act defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from" the plaintiff's mark. 15 U.S.C. § 1127; *see also Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007). "[A] mark does not have to be an exact replica of a registered trademark to be deemed a counterfeit," as such a requirement "would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways." *United States v. Chong Lam*, 677 F.3d 190, 1999 (4th Cir. 2012). Plaintiff 42 is the owner of the federally registered trademark "Popcorn Time." [Doc. No. 1-7 ¶ 3.] Defendant VeePN promotes its service as "Popcorn Time VPN," and began doing so merely three months after this Court previously granted a widely-publicized injunction against another VPN provider for essentially the same conduct. [*Id.* ¶¶ 17-22.] As noted above, Defendant VeePN advertises and promotes its Popcorn Time VPN in connection with the pirated viewing of Copyright Plaintiffs' works. Finally, there is a presumption of likelihood of confusion where a

party sells counterfeit goods. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). Accordingly, Plaintiff 42 has satisfied its burden of showing that it is likely to succeed on the merits of its trademark counterfeiting claim.

### ii. *Likelihood of Irreparable Harm*

In a trademark case in which the moving party clearly establishes a likelihood of success, irreparable harm is often inferred. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 939 (4th Cir. 1995) ("[W]e recognize that irreparable injury regularly follows from trademark infringement."). As discussed above, there is a strong likelihood that Plaintiffs will succeed on the merits. In addition, Plaintiffs would be irreparably harmed absent a TRO because Defendants would have the incentive and capacity to transfer their assets from any account within the United States, depriving Plaintiffs of the ability to obtain monetary relief. [Doc. No. 9-2 ¶¶ 30-33.] This factor therefore favors granting the TRO.

Additionally, Defendant VeePN's promotion of its VPN service "threatens" the businesses of several Plaintiffs and their distributors. [Doc. No. 9-1 ¶ 20.] The goodwill and relationships Plaintiffs maintain with licensees also cuts in favor of finding irreparable harm. [*Id.* ¶ 22-24]; *see also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017).

### iii. *Balance of the Equities*

As noted above, Plaintiffs face irreparable harm from the infringements of their copyrights and trademarks. In contrast, the Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks and copyrights, which are illegal acts, and prevented from profiting from past infringement and moving their funds beyond the reach of the Court. *Cf. Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D. Va. 2008) (holding that any harm a defendant would suffer by being prevented from deliberately infringing a plaintiff's trademark

does not alter the balance of hardship analysis). This factor thus weighs in favor of granting the TRO.

### iv.  *Public Interest*

Finally, the public's interest underlying the prohibition of copyright and trademark infringement is to prevent consumer confusion and deception. *See AMP, Inc. v. Foy*, 540 F.2d 1181, 1185 (4th Cir. 1976); *see also Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 2022 WL 901745, at *9 (S.D. Fla. Mar. 28, 2022) ("The public has a compelling interest in protecting copyright owners' marketable rights to their works." (citing *Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005)). Trademark infringement deceives consumers and there is a "public interest in making the misconduct unprofitable." *Synergistic Int'l v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006). This factor therefore also favors granting the TRO.

### v.  *Security Bond*

As in the previous proceeding before this Court (*Millennium*), Plaintiffs seek a waiver of bond. [Doc. No. 9 at 16-17]; *see also* Order at 7, *Millennium Funding, Inc., et al. v. John Doe, d/b/a Popcorntime.app, et al.*, Case No. 1:21-cv-282-RDA-TCB (Apr. 8, 2021) ("*Millennium*"). Per Rule 65(c), the court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Although the district court has discretion to set the bond amount 'in such sum as the court deems proper,' it is not free to disregard the bond requirement altogether." *Hoechst Diafoil Co.*, 174 F.3d at 421. Plaintiffs argue that no security should be required in this case, or that an amount as low as $1,000 is sufficient given the "strong and unequivocal nature" of Defendants' alleged copyright and trademark infringements. [Doc. No. 9 at 17.]. In light of the

Court's prior determination, and considering the present circumstances, the Court finds that the Plaintiffs should be compelled to post a bond in the amount of $25,000 which is proportionate with the amount this Court has ordered in other *ex parte* TROs. *Cf.* Order at 7, *Millennium*.

   vi. *Without Notice*

  A court must also state why it is issuing a temporary restraining order without notice to the parties. Fed. R. Civ. P. 65(b)(2); *Larus Cloud Serv. Ltd. v. laruscloudservices.net*, 2020 WL 4718064, at *5 (E.D. Va. Mar. 20, 2020). A court may issue a temporary restraining order without notice if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Issuing the temporary restraining order without notice is justified here because, per the affidavit of Plaintiffs' counsel, prior notice will likely lead to the dissipation of assets required to satisfy any potential future judgment. [Doc. No. 9-2 ¶¶ 30-33.] In prior actions against those involved with and/or committing movie piracy, the infringers transferred away large sums of money upon receiving service of the TRO but before such order was entered. Here, Defendant VeePN, while using Plaintiff 42's marks, has actively advertised and promoted its VPN service to assist end users with illegally pirating copyrighted works. Additionally, Defendant VeePN, and those relevant persons and entities affiliated with the Defendant, have taking steps to conceal and obscure their true addresses. Therefore, in considering all the circumstances, issuing the TRO without notice ensures that Defendant VeePN will not be able to continue causing such irreparable harm to Plaintiffs.

  b. <u>Expedited Discovery</u>

  Plaintiffs request that they be permitted to conduct "expedited third-party discovery regarding Defendant DOES 1-100's identities." [Doc. No. 9 ¶¶ 54-58.] District courts enjoy "broad

11

discretion" to supervise discovery, *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014), and may allow discovery to begin before a Rule 26(f) conference occurs. *See* Fed. R. Civ. P. 26(d)(1). Here, Plaintiffs seek expedited discovery from DataCamp through a letter rogatory. Letters rogatory "are the means by which a court in one country requests the court of another country to assist in the administration of justice" by conducting some form of factual discovery. *United States v. Rosen*, 240 F.R.D. 204, 215 (E.D. Va. 2007). "Federal courts have both statutory and inherent authority to issue letters rogatory, regardless of whether the case is civil or criminal." *Id.* (citations omitted). When reviewing applications for letters rogatory, U.S. courts "routinely apply the discovery principles contained in Rule 26 of the Federal Rules of Civil Procedure." *Naid Maritime Co. v. Pacific Gulf Shipping Co.*, 2017 WL 511903, at *3 (D. Md. Feb. 8, 2017) (citations omitted).

Plaintiffs' proposed letter of request seeks to obtain four categories of information DataCamp: (i) name and contact information of the customer assigned the IP address; (ii) account statements from July 1, 2020, to the present; (iii) payment records; (iv) representative samples of communications exchanged between DataCamp and the customers to notices of infringement sent by Plaintiffs' agents to DataCamp concerning piracy at the top infringing DataCamp IP address." [Doc. No. 9 at 19.] Plaintiffs' requested categories, at this stage, are too expansive. Currently, in order to prosecute their claims and serve Defendants DOES 1-100, Plaintiffs need the names and contact information for customers assigned the various IP addresses included in Exhibit A to their proposed letter of request. [Doc. No. 9-4.] Additionally, because companies "give false [contact] information," payment records are "essential to ascertain the correct identity." [Doc. No. 9-2 ¶ 20.] Plaintiffs, however, fail to establish that the other requested categories of information are essential in order to identify Defendants DOES 1-100. Therefore, the Court will not burden a non-party with

such an expansive discovery request absent an additional showing. *Cf. Gilmore v. Jones*, 339 F.R.D. 111, 120 (W.D. Va. 2021) ("[E]ven if they have information that falls within the scope of party discovery, nonparties should not be drawn into the parties' dispute without some good reason." (internal quotations and citations omitted)).

    c.  <u>Notice and Service</u>

In order to serve process on an individual in a foreign country, a federal plaintiff must comply with both Federal Rule of Civil Procedure Rule 4(f) and constitutional due process notice requirements. Rule 4(f) authorizes service of process on individuals in a foreign country in one of three ways:

> 1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> 2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice; or
> 3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). A court "may order a method of service upon Defendants pursuant to Rule 4(f)(3) even if Plaintiffs have not yet exhausted the other two mechanisms of service, so long as the method complies with the requirements of constitutional due process and is not prohibited by international agreement." *DAG Ammo Corp. v. KM Trade d.o.o.*, 2021 WL 7933706, at *1 (E.D. Va. June 4, 2021) (citation omitted). "In order for service to satisfy due process, the methods of service must provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"*WhosHere, Inc. v. Orun*, No. 1:13-cv-00526, 2014 WL 670817, at *3 (E.D. Va. Feb. 20, 2014) (quoting *Mullane v. Central Hanover Bank & Trust Co*, 339 U.S. 306, 314 (1950)).

Here, Plaintiffs propose to serve Defendant VeePN—a Panamanian entity—via an alternative means of service: registered electronic mail. [Doc. No. 9 ¶¶ 59-65.] The United States

and Panama are parties to the Inter-American Convention on Letters Rogatory ("IACLR"). [*Id.*] The IACLR is intended to "replace the traditional letters of request and allow for service of process in a manner recognized by both countries." *RoyaltyStat, LLC v. IntangibleSpring Corp.*, 2017 WL 930129, at *2 (D. Md. Mar. 9, 2017) (footnotes omitted) (citations omitted). However, the "IACLR does not set forth the only means of service, nor does it 'foreclose other methods of service among parties residing in different signatory nations, if otherwise proper and efficacious.'" *Id.* (quoting *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 642 (5th Cir. 1994)). Courts, including this one, have previously authorized alternative means of service of Panamanian corporations and/or the similar manner of service proposed by Plaintiffs. [Doc. No. 9 ¶¶ 62, 64.]

In consideration of the foregoing, and Plaintiffs' additional arguments in their motion, the Court finds that there is good cause to permit notice of this Order, notice of the preliminary injunction hearing, and service of the Complaint by formal and alternative means, given the exigency of the circumstances and the need for prompt relief. The formal and alternative means of service this Order identifies below are authorized by law, satisfy due process, and satisfy Federal Rule of Civil Procedure 4(f)(3) and are reasonably calculated to notify Defendant VeePN of this Order, the preliminary injunction hearing, and of this action. *See WhosHere,* 2014 WL 670817, at *3-4.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Motion [Doc. No. 8.] is hereby GRANTED; it is further

ORDERED that IT RESEARCH, LLC shall immediately freeze all funds associated with Defendant VEEPN CORPORATION under its control and restrain and enjoin the transfer of any monies held in such accounts until further ordered by this Court; it is further

14

ORDERED that PayPal Inc., Paymentwall Inc. and AliPay US, Inc. shall immediately freeze all accounts associated with Defendant VEEPN CORPORATION and restrain and enjoin the transfer of any monies held in such accounts until further ordered by this Court; it is further

ORDERED that ES ACCOUNTING SERVICES INC. shall immediately freeze all accounts associated with Defendant VEEPN CORPORATION and restrain and enjoin the transfer of any monies held in such accounts until further ordered by this Court; it is further

ORDERED that Defendant VEEPN CORPORATION shall immediately cease using the term "POPCORN TIME VPN" on its websites including but not limited to https://veepn.com/blog/popcorn-time-vpn/ and cease marketing its service as "POPCORN TIME VPN" or for using the piracy app Popcorn Time on its websites or other marketing materials; it is further

ORDERED that copies of this Order, notice of the preliminary injunction hearing, and service of the Complaint may be served by any means authorized by law, including (1) transmission by registered electronic email to support@veepn.com and ad57ccecd58b4883aa9544a9d9e31e5a.protect@withheldforprivacy.com as well as email, facsimile, mail and/or personal delivery to the contact information provided by Defendant VeePN to its domain registrar and registries and/or hosting companies and as agreed to by Defendant VeePN in the domain registration and/or hosting agreements; (2) publishing notice on a publicly available Internet website; (3) by personal delivery upon Defendant VeePN, to the extent Defendant provided accurate contact information in the United States; and (4) personal delivery through the Hague Convention on Service Abroad or similar treaties upon Defendant VeePN, to the extent Defendant provided accurate contact information in foreign countries that are signatories to such treaties; it is further

15

ORDERED that the Plaintiffs file a revised proposed letter of request for limited discovery on DATACAMP LIMITED in accordance with this Order; it is further

ORDERED, pursuant to Federal Rule of Civil Procedure 65(b), that a hearing on Plaintiffs' Motion for a Preliminary Injunction is scheduled for July 28, 2022 at 10:00 a.m. in Courtroom 701 of the Albert V. Bryan Courthouse, at which Plaintiffs may request a preliminary injunction pending a final ruling on the Complaint against the Defendant VeePN, enjoining Defendant from the conduct temporarily restrained by the preceding provisions of this Order; it is further

ORDERED that Defendant VeePN shall file with the Court and serve on Plaintiffs' counsel any answering affidavits, pleadings, motions, expert reports or declarations and/or legal memoranda no later than one (1) day prior to the hearing on Plaintiffs' request for a preliminary injunction.

ORDERED that Plaintiffs shall post bond in the amount of $25,000 to be paid into the Court registry pursuant to Federal Rule of Civil Procedure 65(c); and it is further

ORDERED that this Temporary Restraining Order shall remain in effect until the date for the preliminary injunction hearing set forth above, or until such further date as set by the Court or stipulated to by the parties.

It is SO ORDERED.

_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
Entered this 14th day of July, 2022 at 4:00 p.m.